UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Angela Ann Briggs, | ) | Civil Action No.: 4:24-cv-07520-RMG-TER |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | Report and Recommendation |
| Frank Bisignano,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, a partially favorable disposition of Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application in April 2021, with an amended alleged onset date of September 10, 2019. (Tr. 16). The date was moved because that was when Plaintiff was first diagnosed with an impairment referenced in Exhibit 13F/37; the same date is listed on a right foot x-ray and exam. (Tr. 47, 1356-1357). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in March 2024, at which time Plaintiff and a

---

[1]Frank Bisignano became the Commissioner of Social Security in May 2025. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted.

vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued a partially favorable

decision on April 17, 2024, finding that Plaintiff was disabled beginning on March 9, 2024. (Tr. 29).

Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request

for review in October 2024. Plaintiff filed this action in December 2024. (ECF No. 1).

**B.     Introductory Facts**

Plaintiff was born in March 1974, and was forty-seven years old on the date last insured. (Tr.

100). Plaintiff has past relevant work as a sign technician and a composite job of cashier

assistant/bookkeeper and cashier/front end supervisor. (Tr. 27). Plaintiff alleges disability originally

due to "fms, sciatic nerve, rls, plantar fascia, ibs, [and] allergies." (Tr. 100).

**C.     The ALJ's Decision**

In the decision of October 2024, the ALJ made the following findings of fact and conclusions

of law (Tr. 16-28):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since September 10, 2019, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. Since the amended alleged onset date of disability, September 10, 2019, the claimant has had the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the bilateral shoulders, fibromyalgia, bilateral carpal tunnel syndrome status post right-sided release, osteoarthritis and meniscus tearing of the left knee, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. Since September 10, 2019, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that since September 10, 2019, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except she can never climb ladders, ropes, or scaffolds and can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can frequently engage in pushing and pulling with her bilateral upper and lower extremities. She can frequently engage in handling, fingering, and feeling with her bilateral upper extremities, and can occasionally engage in bilateral overhead reaching. She can tolerate occasional exposure to vibration, and must avoid all exposure to hazards such as unprotected heights and moving machinery. She remains capable of simple and detailed, but not complex tasks, can understand, remember, and carry out simple work-related instructions, and can make simple work-related decisions. She will be off task for 10% of the workday, exclusive of regularly scheduled breaks, and will be absent from work 1 day each month on an unscheduled basis.

6.    Since September 10, 2019, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    Prior to the established disability onset date, the claimant was a younger individual age 18-49a younger individual age 45-49. On March 9, 2024, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).(**errors in original**)

8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.    Prior to March 9, 2024, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. **Beginning on March 9, 2024, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)**.

10.    **Prior to March 9, 2024**, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, **there were jobs that existed in significant numbers in the national economy that the claimant could have performed** (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    **Beginning on March 9, 2024, the date the claimant's age category changed**, considering the claimant's age, education, work experience, and residual functional capacity, **there are no jobs** that exist in significant

numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12.     The claimant was not disabled prior to March 9, 2024, but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff's brief is brief, and Plaintiff attached the entire record to the brief. (ECF No. 23).

Plaintiff's arguments have no supporting citation to the record, except once[2] generally to the entire

record of medical exhibits, which covers 1,606 pages. (ECF No. 23 at 2). Plaintiff is not proceeding

*pro se* and is not entitled to liberal construction.

Defendant interpreted Plaintiff's first argument as contesting the RFC determination, but

noted and argues Plaintiff's brief identified no record evidence to support greater RFC limits and

thus, waived the argument. Plaintiff  argues the ALJ "fails to account for the cumulative and

interactive effects from her multiple impairments, including her chronic pain from fibromyalgia,

bilateral shoulder and hand dysfunction, obesity, and mental health symptoms."(ECF No. 23 at 3).

Next, Plaintiff argues there was no material change except for her age between the denial and

the approval; Plaintiff's arguments appear to address the Grid rules. (ECF No. 23 at 4).

Defendant argues the ALJ's analysis here was sufficient, was in accordance with the

applicable law, and Plaintiff has failed to show that the ALJ's decision is not based on substantial

evidence.

---

[2] "Plaintiff alleges disability beginning September 10, 2019—a date supported by treating physicians and consistent with medical evidence (See Exhibits 1F through 24F)." (ECF No. 23 at 2).

Plaintiff passingly argues the "ALJ gave insufficient weight to the opinions of treating physicians and disregarded well-documented functional limitations." (ECF No. 23 at 3). Which opinion and functional limitations Plaintiff is referring to is not specified, but she may be challenging additional limitations as to sit, stand, lift, and manipulate. (ECF No. 23 at 3)(Regardless, the entire RFC is addressed below).  The court is unable to address arguments not made by Plaintiff as to which opinions Plaintiff believes there is error and as to which uncited regulatory factors are at issue. Any argument as to opinions has been waived.  *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument-even if its brief takes a passing shot at the issue.") (cleaned up).

It appears Defendant also briefed a subjective symptom argument out of an abundance of caution, but Plaintiff's brief does not put forth a subjective symptom evaluation argument based in the relevant SSR 16-3p factors, other relevant case law or regulations, or with citation to the record. Plaintiff waived this issue; regardless, the ALJ reviewed Plaintiff's allegations and reports and credited several of Plaintiff's allegations and connected RFC limitations. (Tr. 21, 25-27). A claimant's allegations alone can never establish that she is disabled; an ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529. Despite waiver of this issue, based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not fully consistent with the record; the ALJ gave several RFC limitations connected to Plaintiff's allegations.

## A.     LEGAL FRAMEWORK

### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5)

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of

7

that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**RFC**

Plaintiff presents bare arguments as to the RFC. It is unclear what particular limitations Plaintiff seeks and what medical record evidence Plaintiff believes supports greater RFC limitations,

as Plaintiff did not cite to any particular evidence in the record. (ECF No. 23 at 2-3). Defendant noted Plaintiff waived these issues under the applicable case law. (ECF No. 26 at 7). Plaintiff responded: "The Commissioner faults Plaintiff for not identifying precise limitations to include in the RFC, claiming such arguments are waived. This mischaracterizes the burden." (ECF No. 28 at 2). Then, Plaintiff generally states the records from 2019 to 2021 reflect "significant limitations." (ECF No. 28 at 2).

When Plaintiff is presenting an appeal to the court, the burden is on Plaintiff to present her arguments; the applicable Federal Supplemental Rules for Social Security Actions provide: "A brief must support assertions of fact by citations to particular parts of the record." Federal Supplemental Rules for Social Security Actions. Even before the ALJ, Plaintiff has the burden at the first four Steps; the Commissioner only has the burden at Step Five. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The court is not required to rummage through the over 2,000 page administrative record to construct and present a well-supported position for a plaintiff. *See Hayes v. Self-Help Credit Union*, No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014)(noting it is not the court's role or responsibility to perform research needed to support or rebut a perfunctory argument). The Fourth Circuit stated the courts "are not like pigs, hunting for truffles buried in briefs. Similarly, it is not our job to wade through the record and make arguments for either party." *Hensley v. Price*, 876 F.3d 573, 581 (4th Cir. 2017); *see Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument-even if its brief takes a passing shot at the issue.") (cleaned up).

Despite the waiver, in this particular instance, the court will review the RFC issue generally. An adjudicator is solely responsible for assessing a claimant's RFC.  20 C.F.R. § 416.946(c).  In

making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, "'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ found an RFC of:

> After careful consideration of the entire record, the undersigned finds that since September 10, 2019, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except she can never climb ladders, ropes, or scaffolds and can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can frequently engage in pushing and pulling with her bilateral upper and lower extremities. She can frequently engage in handling, fingering, and feeling with her bilateral upper extremities, and can occasionally engage in bilateral overhead reaching. She can tolerate occasional exposure to vibration, and must avoid all exposure to hazards such as unprotected heights and moving machinery. She remains capable of simple and detailed, but not complex tasks, can understand, remember, and carry out simple work-related instructions, and can make simple work-related decisions. She will be off task for 10% of the workday, exclusive of regularly scheduled breaks, and will be absent from work 1 day each month on an unscheduled basis.

(Tr. 20). Plaintiff mentions generally pain, shoulder, hand, obesity, and mental health. (ECF No. 23 at 3).

The ALJ considered Plaintiff's testimony and written allegations from three forms, citing hearing testimony, the SSA forms at Exhibits 2E and 3E, and the reports to the consultative examiner at Exhibit 7F. (Tr. 21). Exhibit 2E was an April 2021 SSA form by Plaintiff who answered that she believed her condition became severe enough to keep her from working in March 2021. (Tr. 307). Exhibit 3E was a functional report completed by Plaintiff in October 2021; Plaintiff reported always being in pain. (Tr. 316).   Plaintiff reported she performed chores, drove, went out alone, shopped, socialized, and occasionally attended church. (Tr. 21, 321-327). Plaintiff reported she cooked a dinner with vegetables three times a week and ate sandwiches otherwise. (Tr. 322). Plaintiff reported she could walk 20-30 yards. (Tr. 325). Exhibit 7F was the January 2022 consultative exam by Dr. Smith. (Tr. 793). Plaintiff reported she could sit one hour without difficulty and on a good day do some chores. (Tr. 793). Plaintiff ambulated slightly favoring the right but got on and off the table without difficulty. Plaintiff did not require an assistance device for ambulation. (Tr. 794). Plaintiff had 5/5 strength and normal range of motion. Plaintiff had some mild crepitus in knees. Plaintiff performed the toe walk without too much difficulty but had pain in right foot with heel walks. Plaintiff could squat and rise without assistance. (Tr. 794). Plaintiff had some tenderness to palpation to the heel, "but nothing too significant." (Tr. 794). Plaintiff had normal affect and performed the exam "fairly well." (Tr. 795).   The ALJ found Plaintiff's statements about the effects of her symptoms were "not bolstered by her treatment history or medical findings outlined below." (Tr. 21).

The ALJ considered the following records. Plaintiff was seen in December 2020, citing Exhibit 1F/11 for fatigue, weakness, and soreness; the exam was normal. Plaintiff was referred to

physical therapy and it was noted the symptoms "may be consistent with fibromyalgia." (Tr. 21). Exhibit 1F/11 is Dr. Palmer's notes from December 22, 2020. (Tr. 409). Plaintiff reported weakness was never present without soreness. (Tr. 410). Plaintiff reported some numbness and tingling in hands. (Tr. 410). Plaintiff had normal narrow based gait and was able to walk without difficulty. (Tr. 411). Dr. Palmer noted this was unlikely to be neurological but would rule out possible neurological etiologies. Plaintiff was referred to physical therapy for symptomatic relief. (Tr. 412).

In January 2021, Plaintiff attended physical therapy for "benign joint hypermobility syndrome and generalized muscle weakness." (Tr. 21). The ALJ noted Plaintiff presented with weakness, had full range of motion, but poor posture, and inapposite of December, ambulated with multiple gait abnormalities. (Tr. 21-22, 496). The ALJ cited the January 2021 physical therapy notes, Exhibits 2F/50 and 2F/55. (Tr. 22). Physical therapy was to improve her posture and strength in order to decrease her pain. (Tr. 22).

In March 2021, Plaintiff presented a number of complaints to neurology for IBS, RLS, mild headaches, weakness, soreness, joint pain, anemia, and Vitamin D. The ALJ noted: "It was likely she had fibromyalgia, and physical therapy was to be considered, as well as exercise and working up to her regular regimen (Exhibit 1F/4)." (Tr. 22). Exhibit 1F/4 is a neurology visit on March 2, 2021 with Dr. Milano. (Tr. 402). Plaintiff reported she talked to her primary doctor about possible fibromyalgia but had no medications prescribed. (Tr. 403). Plaintiff reported she found physical therapy to be "too much of a time commitment." (Tr. 403). Plaintiff had a negative workup and likely had fibromyalgia. (Tr. 404). "The mainstays of treatment with the greatest evidence base include exercise, sleep management, and stress reduction." (Tr. 404). Plan was to consider returning to physical therapy, "counseled at length on the importance of exercise and slowly working up to a

regular regimen," and refer to sleep medicine due to possible apnea. (Tr. 404).

The ALJ noted there was no specific testing associated with the referral by FNP Miles to rheumatology in September 2021, citing Exhibit 5F/10. (Tr. 22, 556). Plaintiff reported pain in arms and legs and had normal exam. Plaintiff was assessed with fibromyalgia, restless leg syndrome, vitamin D deficiency, obstructive sleep apnea, obesity, and polyarthralgia. (Tr. 22, 564). Under treatment for fibromyalgia, FNP Miles' notes stated "refer to rheumatology at MUSC at patient request, Dx per MUSC, check labs." (Tr. 565). In December 2021, obstructive sleep apnea was well controlled; the ALJ cited Exhibit 6F/5, notes from FNP Crockett. (Tr. 22). Plaintiff's review of systems was positive for myalgias. (Tr. 660). Plaintiff had good compliance with CPAP. (Tr. 660).

In January 2022, Plaintiff was seen for a consultative exam. (Tr. 793). Plaintiff reported a 2020 injection in her feet provided great relief but symptoms were returning. Plaintiff reported using over the counter medication for IBS and shots every two weeks for allergies. Plaintiff reported being able to walk half a block. (Tr. 22 ). Upon exam, Plaintiff did not require an assistive device, had full range of motion, mild crepitus, 5/5 strength, normal toe walking but pain with heel walking. Plaintiff had "some tenderness to palpation along the fascia insert into the heel, but nothing significant." (Tr. 23). The examiner noted Plaintiff performed fairly well. (Tr. 23).

January 2022 imaging showed some moderate spondylosis of her shoulder and mild to moderate spinal canal stenosis, with the ALJ citing Exhibits 9F/40, 8F/16, and 8F/22. (Tr. 23). Exhibit 9F/40 was cervical spine impression of minimal chronic height loss of C6 vertebral body, degenerative in nature, and multilevel degenerative changes of the cervical spine with focal disc protrusion at C3-C4 resulting in mild to moderate spinal canal stenosis. Shoulder impression was minimal acromioclavicular arthropathy. (Tr. 900). Exhibit 8F/16 was the same impression of the

cervical imaging. (Tr. 812). Exhibit 8F/22 was normal bone density. (Tr. 818).

In March 2022, Plaintiff complained of neck pain and tingling/numbness in her fingers and hands to Dr. Lena of neurosurgery. (Tr. 23, 802). Upon exam, Plaintiff was neurologically intact, 5/5 strength, no deficits in sensation, and had normal gait. Musculoskeletal exam was normal. (Tr. 803). Dr. Lena recommended physical therapy due to the lack of myelopathy findings on exam; the ALJ cited Exhibit 8F/6. It was noted Plaintiff had some flattening of the cord at C3-7. (Tr. 23, 804).

The ALJ considered that October 2022 testing showed mild right median mononeuropathy at the wrist for a diagnosis of carpal tunnel, but there was no electrophysiologic evidence of right cervical radiculopathy, citing Exhibit 9F/41, notes of Dr. Campbell of anaesthesiology and perioperative medicine. (Tr. 23, 901). Dr. Campbell noted Plaintiff received facet injections in several cervical vertebra, was to continue meloxicam and Tylenol, and Dr. Cambell recommended Plaintiff continue physical therapy, home exercise, and judicious use of medications as part of the multimodal pain management plan. (Tr. 901).

In January 2023, Plaintiff was seen by rheumatology. Plaintiff had slightly limited range of motion and tenderness in four locations. (Tr. 23). Plaintiff had no warmth, swelling, or deformity of the small joints of her hands and feet. Plaintiff had tenderness of dorsom into forearms and shoulders. (Tr. 23). The ALJ cited Exhibit 9F/56, Dr. Hant's notes from rheumatology. (Tr. 24, 916). "Potential median nerve release on the right was discussed" and Plaintiff was "referred to pain management for possible facet joint injections," citing Exhibit 9F/67. (Tr. 24). "At our visit did not see signs to suggest inflammatory arthritis and felt that low titer ANA was not clinically significant in her particular case." (Tr. 916). Upon exam, Plaintiff had "slightly limited range of motion with right and left rotation as well as lateral flexion bilaterally" and "continued tenderness along spinous

process at base of neck as well as pain along trapezius, rhomboids, and paraspinal muscles in thoracic spine." (Tr. 919).

In March 2023, Plaintiff was seen by Dr. Hellegass and had increased pain with rotation. Plaintiff examined with positive facet loading, Spurling's, and Tinel's, and tenderness of the cervicothoracic spine and cervical facet joints. Plaintiff had 5/5 strength. (Tr. 24, 898). The next month, Plaintiff had pancreas and gallbladder problems. (Tr. 24). Plaintiff had flat affect. (Tr. 24).

In April 2023, Plaintiff had carpal tunnel surgery; the ALJ cited Exhibit 9F/7. (Tr. 24, 867).

The ALJ considered that in June 2023, Plaintiff was seen in the emergency room for radiating neck pain with intermittent weakness into her upper extremities, and she wanted to try injections before undergoing surgery. Plaintiff had normal gait, range of motion, pain with rotation, positive facet loading, Spurling's, and Tinel's. Plaintiff had tenderness of her spine and left buttock. Plaintiff had 5/5 strength. (Tr. 24). Plaintiff reported "she has sciatica fairly regularly and is usually treated with a shot of steroids and anti-inflammatory medication." (Tr. 1441).

The ALJ discussed that in the fall of 2023, Plaintiff's knee had mild joint space narrowing, horizontal tear of meniscus, high-grade chondrocytes, and cartilage loss, citing Exhibit 18F/4. (Tr. 25, 1457). Plaintiff was to start physical therapy for her neck and arms, citing Exhibit 21F/33. (Tr. 25, 1678). The notes stated Plaintiff would benefit from twelve weeks of physical therapy to address deficits so she can return to her prior level of function. (Tr. 1678).

In January 2024, Plaintiff continued with knee complaints and additional imaging showed findings consistent with osteoarthritis. "Surgical intervention was deemed not warranted," citing Exhibits 18F/4, January knee imaging of osteoarthritis, and Exhibit 21F/4-6, notes from orthopaedic surgeon Dr. Alan. (Tr. 25, 1457, 1651).

The ALJ then considered that the medical record did not show functional limitations consistent with a complete inability to perform all work activity. The ALJ acknowledged that Plaintiff had impairments that produced limitations and Plaintiff had not demonstrated limitations in regard to pain, manipulative deficits, fatigue, lifting, standing, walking, and routine changes in excess of those accounted for in the RFC. (Tr. 25). The ALJ noted Plaintiff had a number of impairments that collectively limited Plaintiff to sedentary exertion. The ALJ acknowledged ongoing and consistent allegations of pain and weakness. The ALJ noted somewhat benign mild findings in her spine, shoulders, and EMG testing. The ALJ considered that carpal tunnel findings accounted for some of Plaintiff's symptoms and Plaintiff had surgery which relieved "many of her pre-surgical problems." (Tr. 25).

The ALJ noted Plaintiff's knee problems were the result of a fall while traveling and treatment remained conservative without surgery. The ALJ forthright considered Plaintiff's fibromyalgia stating Plaintiff "carries a valid diagnosis of fibromyalgia confirmed by laboratory work and tender point findings. The claimant complains of many of the typical fibromyalgia symptoms, including fatigue, aching pain, and weakness. Taken in conjunction with her obese body habitus, these various conditions compel a sedentary residual functional capacity." (Tr. 25). The ALJ acknowledged Plaintiff's reports of weakness affected lifting, carrying, standing, and walking as well as evidence supporting postural limitations. (Tr. 25). The ALJ accounted for these limitations. The ALJ specifically found and explained: "The combination of fibromyalgia and osteoarthritis in her shoulders limits her capacity for overhead reaching, while complaints of pain, tingling, and weakness in her arms related to fibromyalgia and carpal tunnel affect her capacity for handling, fingering, and feeling. Greater limitations are not warranted given the 'mild' nature of her carpal tunnel syndrome,

and the apparent success of her release surgery." (Tr. 25-26). Further, the ALJ gave environmental

limitations of limit to exposure to vibration, and found fatigue "lead to her restriction from hazards."

(Tr. 26). The ALJ found Plaintiff's pain and fatigue "genuine based upon the consistency of her

complaints and the regularity of her treatment visits." The ALJ found this created the sedentary

exertion RFC and the "need for off-task time and absences." The ALJ found that mental effects from

fibromyalgia alleged by Plaintiff limited Plaintiff "to the equivalent of unskilled work activity." (Tr.

25). Despite not being presented as an argument by Plaintiff here, the ALJ specifically addressed

concerns from SSR 12-2p and *Arakas v. Comm'r*, 983 F.3d 83 (4th Cir. 2020).

The ALJ then considered Plaintiff's nonsevere impairments in formulating the RFC

determination:

> There are also several non-severe impairments, with complaints of IBS among them.
> The claimant's IBS is treated with medications. Her complaints are relatively rare and
> her condition is longitudinally noted to be one more of constipation than
> uncontrollable diarrhea, recent treatment notes notwithstanding. In addition to those
> other conditions identified as non-severe, it should be noted that the claimant's
> diagnosis of depression produces few abnormal mental status examination findings,
> is not treated by a specialist, and produces no need for emergency or impatient care.

> The record contains some confusion among providers regarding the nature of the
> claimant's pain and fatigue. There are bare diagnoses of RA within the record, but
> testing remains negative and specialists discount this diagnosis in favor of
> fibromyalgia. It bears noting that various images show none of the erosion that would
> be expected with the presence of RA.

(Tr. 26). The ALJ discussed Plaintiff's activities of daily living and the opinion evidence. (Tr. 26-

27).

The ALJ thoroughly explained the reduction in the RFC determination to account for

Plaintiff's impairments, complaints, and supported limitations. (Tr. 22-27). Based on the foregoing,

the ALJ properly considered the record of Plaintiff's allegations, subjective reports, and record

evidence, and cited to substantial evidence to support the RFC found. Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record and provided explanation why there were no further limitations in the RFC. *See Sizemore v. Berryhill*, 878 F.3d 72 (4th Cir. 2017). An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

**<u>Grids</u>**

Plaintiff argues the disability found based on age is arbitrary and there was no material change in Plaintiff's medical circumstances as of the date of her birthday and Plaintiff desires disability from her alleged onset date. (ECF No. 23 at 3-5). Defendant notes "Plaintiff seems to misunderstand the grid rules." (ECF No. 26 at 18). The change in age is what triggers application of a different Grid Rule.

At Step Five, the ALJ must determine whether a claimant can perform "other work." 20 C.F.R. § 416.920(g). A claimant can perform "other work" if there are one or more jobs existing in significant numbers in the national economy that he can perform given his functional limitations. 20 C.F.R. § § 404.1566(b), 416.966(b). One way an ALJ can make this determination is through the use of the Medical Vocational Guidelines ("the Grids"). 20 C.F.R. pt. 404, subpt. P, app. 2; *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). The Grids contain numbered tabled rules that direct

conclusions of "disabled" or "not disabled" based on a claimant's vocational factors and his specific exertional RFC (sedentary, light, etc.). 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b).

Where non-exertional limitations exist, the Grid rules will not be directly applied, but are used as a framework. SSR 83-14, 1983 WL 31254, *1. The applicable Grid for a claimant's "vocational profile and maximum sustained exertional work capability" is "the starting point to evaluate what the person can still do functionally." SSR 83-14, *3. Once the ALJ decides if a person can meet the primary strength requirements of sedentary, light, or medium (standing, sitting, walking, lifting, carrying, pushing, pulling), the ALJ then decides as to how much of this occupational base remains, considering certain non-exertional limitations. SSR 83-14, *3-4. VE testimony may be helpful in the erosion inquiry but is not always required. SSR 83-14, *4; *see Golini v. Astrue*, 483 Fed. Appx. 806, 808 (4th Cir. 2012).

Plaintiff does not contest any of the specific jobs found at Step Five, nor the numbers of those jobs. Without citation, Plaintiff generally states "the existence of such jobs must be accessible to the Plaintiff within her geographic area. To the Plaintiff's knowledge, no such jobs exist." (ECF No. 23 at 4). This is not an accurate portrayal of the law applicable at Step Five. "National economy" is a term of art in the SSA context; it means "either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566. The ALJ is entitled to place reasonable reliance upon the vocational expert's testimony in finding there were a significant number of jobs in the national economy that Plaintiff could perform. *See Gerald v. Kijakazi*, No. 6:20-CV-03446-BHH-KFM, 2021 WL 8014692, at *13 (D.S.C. Oct. 27, 2021), *report and recommendation adopted sub nom.*, 2022 WL 669626 (D.S.C. Mar. 7, 2022). The ALJ found final assembler, 16,000 positions in the national economy, printed circuit board assembly worker, 11,200 positions in the national economy, and

stuffer, 12,200 positions in the national economy. (Tr. 28-29). "The term significant number is not statutorily defined and courts have generally found that what constitutes a significant number is fairly minimal." *Best v. Berryhill*, 2017 WL 685601, at *4 (E.D.N.C. Feb. 3, 2017), *adopted by* 2017 WL 684184 (E.D.N.C. Feb. 21, 2017).

"If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d). The ALJ found the applicable Grid Rule at March 9, 2024, Plaintiff's fiftieth birthday was Rule 201.14. The ALJ found the applicable Grid Rule prior to that date, where Plaintiff was not age fifty was Rule 201.21 and in accordance with the above case law and SSRs, a VE was used to determine the extent of erosion of the unskilled sedentary occupational base. Grid Rule 201.21 is age 45-49, high school graduate, prior work of skilled or semiskilled but skills not transferable, and result is "not disabled," if there are no nonexertional RFC limitations, but where non-exertional limitations exist like in this case, the Grid rules will not be directly applied, but are used as a framework. SSR 83-14, 1983 WL 31254, *1. The ALJ did just that and consulted a vocational expert for the time period in which Plaintiff was younger than age fifty.

The Grids apply where "a rule ... directs a conclusion that you are disabled based upon your strength limitations." 20 C.F.R. §§ 404.1569a(d), 416.969a(d). At March 9, 2024[5], age fifty, with a sedentary RFC, Grid Rule 201.14 provides with high school graduate, prior work of skilled or semiskilled but skills not transferable that the result is "disabled." 20 C.F.R. Pt. 404, Subpt. P, App.

---

[5] Technically, by SSA standards a person attains a particular age the day before their birthday. POMS DI 25015.005.B; GN003002.400(example: "a person born on 1/1/1919, attains age 65 on 12/31/1983").

2, Rule 201.14. The regulations themselves explain "we do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule." 20 C.F.R. § 416.969. Plaintiff was not disabled per the SSA Grids until she turned age fifty and met the vocational factors under her sedentary RFC. *Id.* Plaintiff argues the date of age fifty is "unsupported by any functional change." (ECF No. 28 at 2-3). Plaintiff's assertion that there was no "meaningful medical change" is unrelated to Plaintiff's age change finding of disability by following the Grids. Defendant notes it is true there has been no material change in her medical condition, but that the age category change was a material change in the vocational factors at Step Five. (ECF No. 26 at 19). Hypothetically, a medical change related to the Grids could relate to a change from light RFC to sedentary RFC with resulting Grid Rule change, but Plaintiff was already at a sedentary RFC supported by the record. *See e.g. Williams v. Kijakazi*, No. 2:20-CV-04223-MGB, 2021 WL 9667651, at *7 (D.S.C. Oct. 21, 2021)(Grid provides "that a person of Plaintiff's education and age would be considered disabled if they were only capable of sedentary work;" remanding where could impact RFC down to sedentary). Plaintiff's changing Grid Rule only resulted due to her age change. The applicable regulations belie Plaintiff's assertion that the date of disability is an "arbitrary and unsupported" onset date.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this

Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).   As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence.   Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be AFFIRMED.

                                                                    s/ Thomas E. Rogers, III
August 5, 2025                                                       Thomas E. Rogers, III
Florence, South Carolina                                            United States Magistrate Judge